United States District Court
Southern District of Texas
ENTERED
July 16, 2026
Nathan Ochsner, Clerk

United States District Court
Southern District of Texas
FILED
JUL 16 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CASE NO. 7:23-CR-0051-5 |
| | § | |
| BALDEMAR MALACARA NOYOLA, JR. | § | |

**REPORT AND RECOMMENDATION**

Defendant BALDEMAR MALACARA NOYOLA, JR. is currently serving a prison term of 65 months for possessing with intent to distribute methamphetamine. (Dkt. No. 588). Pending is his pro se *Motion for Modification of Sentence* (the "Motion") (Dkt. No. 632), which is predicated on "extraordinary and compelling" circumstances as contemplated by 18 U.S.C. § 3582(c)(1)(A)(i). Defendant seeks re-sentencing so a term of supervised release may be imposed, thus making him eligible for time credits from the Bureau of Prisons (the "BOP") on his prison sentence.[1] (*Id.* at 5-9). For reference, the sentencing court decided against imposing supervised release given Defendant's status as a deportable alien. (*See* Dkt. No. 650 at 4 & n.2). In support of extraordinary circumstances, Defendant offers that the non-imposition of supervised release creates unwarranted sentencing disparities. (Dkt. No. 632 at 7-9).

The Government has filed a response in opposition (Dkt. No. 662), arguing that Defendant fails to establish each of the procedural and substantive elements necessary to modify his sentence (*id.* at 7-17). According to the Government, Defendant does not show that he adequately exhausted his administrative remedies before the BOP (*id.* at 16-17), nor does Defendant present

[1] Defendant offers several cases where district courts have modified sentences to add a term of supervised release insofar as the effect of the modification is to reduce the term of incarceration. *See, e.g.*, *United States v. Perez Sanchez*, 2024 WL 1069884 (E.D.N.Y. Mar. 12, 2024) (collecting cases).

extraordinary and compelling circumstances (*id.* at 9-15). Defendant has submitted a reply (Dkt. No. 668), standing by his prior argument for re-sentencing (*id.* at 5-19), while also raising a new circumstance—the medical incapacitation of his elderly father (*id.* at 19-22).

This matter was referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Upon reviewing the record and the relevant law, the Magistrate Judge RECOMMENDS that the Motion (Dkt. No. 632) be DENIED.

## I. BACKGROUND

Defendant agreed at re-arraignment that the following factual basis offered by the Government in support of his guilty plea was true and correct:

> On or about [July 24, 2018], in the Southern District of Texas, [Defendant] possessed with intent to distribute approximately 60 kilograms of methamphetamine. [Defendant] received two speaker boxes containing the methamphetamine from Chino, and he subsequently delivered them to an individual, who, unbeknownst to [Defendant], was an informant for the Drug Enforcement Administration.
>
> [A co-conspirator] then also delivered an additional two speaker boxes to the informant for the Drug Enforcement Administration. There were 40 kilograms of methamphetamine that [Defendant] delivered to the informant for the Drug Enforcement Administration. [Defendant] intended that the drugs be further distributed.

(Dkt. No. 640 at 20-21).

In January 2023, Defendant was indicted on several counts related to the unlawful trafficking of methamphetamine. (Dkt. No. 1). He was detained pending trial. (Dkt. No. 113).

In December 2023, Defendant pleaded guilty pursuant to a plea agreement at a re-arraignment held before the undersigned Magistrate Judge to one count of possessing with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine under Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A). (Dkt. Nos. 434, 451, 466, 640).

The Probation Office then prepared a Presentence Report ("PSR") using the 2023 version of the United States Sentencing Guidelines (the "Guidelines"). (Dkt. No. 494 at 42). The PSR recommended a base offense level of 38 under § 2D1.1(a)(5) and (c)(1) given the type and amount of the narcotics involved in the offense, or 59.65 kilograms of "Ice" methamphetamine. (*Id.* at 42-43). Also recommended was a two-level upward adjustment to the offense level for Defendant's "aggravating role" pursuant to § 3B1.1(c), insofar as Defendant "coordinated" the transportation of methamphetamine between co-conspirators. (*Id.* at 43). Assuming a three-level downward adjustment for full acceptance of responsibility under § 3E1.1, the PSR calculated a total offense level of 37. (*See id.* at 43-44, 49). Based on his lack of criminal history, Defendant was placed in a criminal history category of I. (*Id.* at 44). The PSR noted that the applicable statutory prison term was 10 years to life, and that under the Guidelines, Defendant's offense level of 37 and criminal history category of I yielded an advisory imprisonment range of 210 to 262 months. (*Id.* at 49). The PSR further noted that the offenses of conviction carried a term of supervised release of five years up to life. (*See id.*).

The defense filed objections to the PSR, requesting that Defendant's offense level be calculated as if he were an average participant, that he receive full acceptance of responsibility, that he receive a two-level reduction to the offense level pursuant to § 4C1.1 for being a first-time offender, that he receive a two-level reduction pursuant to § 2D1.1(b)(18) for meeting the criteria of § 5C1.2(a), or the "safety valve" provision, and that he be sentenced without regard to any statutory minimum sentence in accordance with the safety valve. (Dkt. Nos. 487, 554).

In September 2024, Defendant was sentenced by the Honorable Micaela Alvarez, Senior United States District Judge. (Dkt. No. 588 at 1). Judge Alvarez effectively sustained the objections to the PSR and granted the defense's sentencing-related requests, thus calculating

Defendant's offense level at 31 and imposing a prison sentence of 65 months, which represented a downward variance from the revised Guidelines range of 108 to 135 months of imprisonment. (*See id.* at 2; *see also* Dkt. No. 589 at 1-2). No fine was imposed. (*See* Dkt. No. 588 at 3; *see also* Dkt. No. 589 at 1). Nor did Judge Alvarez impose a term of supervised release. (*See* Dkt. No. 588 at 4). The Magistrate Judge notes that, subject to the safety valve, a defendant may be sentenced to a term of supervised release without regard to any statutory mandatory minimums. *See* 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2(a). Moreover, consistent with Sections 5D1.1 and 5D1.2 of the Guidelines, Judge Alvarez specifically stated that no supervised release would be imposed insofar as Defendant was a non-citizen of the United States, but rather a citizen of Mexico, and thus likely to be deported after serving his prison term.[2] (*See* Dkt. No. 650 at 4 & n.2).

A final judgment was entered on October 2, 2024. (Dkt. No. 588).

On September 11, 2025, Defendant submitted a letter to the warden of his BOP facility, writing as follows:

> Pursuant to [§ 3582(c)(1)], I am making this request for compassionate release to exhaust my remedies prior to filing a formal motion with the Court. More specifically, I am requesting that you reduce my term of imprisonment by 1 year considering my [time] credits do not apply towards my early release[.] (I do not have a term of supervised release, which is necessary to get [time] credits applied[.]) Please let me know in writing whether you grant or deny my request within 30 days.

(Dkt. No. 632-1 at 2).

Less than one week later, on September 17th, the warden responded in writing that—

> [i]n accordance with Program Statement 5050.50, the [BOP] does not have authority, through its compassionate release/reduction in sentence procedures, to reduce an inmate's sentence based on the belief an unfair sentence was administered. Any changes to your court order sentence must be addressed through the sentencing court.

[2] Insofar as Defendant argues that the imposition of supervised release was mandatory (Dkt. No. 632 at 2), his argument is foreclosed. The Magistrate Judge addressed this issue at length through a report and recommendation for the denial of a motion by Defendant for collateral review. (Dkt. No. 650 at 4, 11).

> Accordingly, your request for a Compassionate Release/Reduction in Sentence is denied. If you are not satisfied with this response, you may appeal through the [BOP], Administrative Remedy Process by obtaining an Informal Resolution form through your Correctional Counselor.

(*Id.* at 1).

Defendant did not appeal the warden's denial through the BOP but proceeded instead to file the Motion, which is dated October 15, 2025. (Dkt. No. 632 at 9). Defendant explains his situation as follows:

> [Defendant] has participated in evidence-based recidivism reduction programming activities. [He] has enrolled in many educational programs offered by the [BOP]. Through these educational classes, he has demonstrate[d] not only personal growth and rehabilitation, but has also learned various skills. However, the BOP has informed [Defendant] that he cannot obtain the benefits of [time credits] because his sentence did not include a term of supervised release.

(*Id.* at 2). For reference, inmates who successfully participate in Evidence-Based Recidivism Reduction Programs or Productive Activities are generally eligible to receive time credits towards transfer to prerelease custody or supervised release, 18 U.S.C. § 3632(d)(4)(C), such that up to twelve months of time credits may be used to reduce an inmate's prison sentence, *see id.* § 3624(g)(3). Time credits cannot be applied towards an early supervised release if no term of supervised release was imposed. Again, supervised release was not imposed here given Defendant's status as a deportable alien. In support of extraordinary circumstances, Defendant argues that his ineligibility for time credits is unfairly affected by the non-imposition of supervised release given his immigration status. (Dkt. No. 632 at 7-9). According to Defendant, the circumstances create an unwarranted sentencing disparity between prisoners, like himself, who are only likely to be deported, as against prisoners who are subject to final orders of removal, who are

categorically precluded from earning time credits.[3] *See* 18 U.S.C. § 3632(a), (b), (d)(4)(C), (E)(i). *see also United States v. Perez Sanchez*, 2024 WL 1069884, at *3-5 (E.D.N.Y. Mar. 12, 2024).

On May 29, 2026, upon the Magistrate Judge's order (Dkt. Nos. 656, 658), the Government filed its opposition (Dkt. No. 662).

Defendant then submitted his reply dated June 10, 2026. (Dkt. No. 668). Notably, through the reply, Defendant raises a new circumstance in support of re-sentencing, that is, the medical incapacitation of his elderly father. (*Id.* at 19-22).

## II. LEGAL STANDARDS

Section 3582(c) provides, in relevant part, that the district court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved potions of the original term of imprisonment)," upon motion of the Director of the BOP, "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," after considering any applicable factors in 18 U.S.C. § 3553(a), if the district court finds that "extraordinary and compelling reasons warrant such a reduction," and "that such a reduction is consistent with applicable policy statements [under the Guidelines]." 18 U.S.C. § 3582(c)(1)(A)(i).

This statutory language sets out what are effectively four factors: (1) that the defendant has exhausted their administrative rights; (2) that extraordinary and compelling circumstances warrant the modification; (3) that a modification is consistent with the § 3553(a) sentencing factors; and

---

[3] The Government states that Defendant is not currently subject to a final order. (Dkt. No. 662 at 2-3).

(4) that the modification is consistent with the Guidelines. *See United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).

Where a defendant asks the BOP to file a motion on their behalf, as here, exhaustion may follow two routes, *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020), that is, either full administrative exhaustion or the expiration of the statutory 30-day period, *see United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021). Following an initial request that the BOP bring a motion on the prisoner's behalf,

> the prisoner has a choice. First, he may wait for a response from the BOP and seek further administrative review of that response (assuming it is adverse). On that path, only once he has "exhausted all administrative rights to appeal" may he bring his motion in the district court. Second, a prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court.

*Id.* (citing 18 U.S.C. § 3582(c)(1)(A)) (internal citations omitted). While this administrative requirement is not jurisdictional, it is mandatory, *Franco*, 973 F.3d at 467-48, such that the district court has no authority to waive it, *United States v. Pinson*, 2023 WL 5985245, at *3 (S.D. Tex. Sept. 14, 2023) (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)).

For purposes of the term "extraordinary and compelling" circumstances, "extraordinary" means beyond or out of the common order, remarkable, and singular. *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023). "Compelling" refers to an irresistible driving force. *Id.* As such, a prisoner may seek relief "only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.*

The § 3553(a) sentencing factors are as follows: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, deter criminal conduct, protect the public, and provide the defendant with needed education or vocational training; (3) the kinds of sentences available; (4)

the kinds of sentences and sentencing ranges established for the applicable category of offense or defendant; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Any modification must also be consistent with the relevant policy statements under the Guidelines, which are found at § 1B1.13(b). *See United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025). Section 1B1.13(b) sets out several categories of circumstances deemed "extraordinary and compelling" under the Guidelines, including the following: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) the sexual abuse of the defendant while in BOP custody; and (5) any other, similarly grave, circumstance or combination of circumstances. U.S.S.G. § 1B1.13(b). Notably, the family circumstances of the defendant contemplate "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." *Id.* at § 1B1.13(b)(3)(C).

The defendant bears the burden of establishing these factors in support of a sentencing reduction. *United States v. Washington*, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020).

## III. ANALYSIS

Defendant raises two ostensibly "extraordinary and compelling" circumstances why his sentence should be modified. The main circumstance, raised in the Motion itself, is that the non-imposition of supervised release, which makes Defendant ineligible for time credits on his prison sentence, was unfairly based on his deportable alien status and creates unwarranted sentencing disparities with prisoners who are subject to final orders of removal. (Dkt. No. 632 at 7-9). The other circumstance, raised for the first time in his reply, is that Defendant is the only available caregiver for his elderly father, who has become incapacitated due to various medical conditions.

(Dkt. No. 668 at 19-22). Whatever the circumstance, Defendant fails to show one or more of the necessary elements for the modification of his sentence.

**A. Exhaustion**

Although Defendant's letter to the warden broadly states his request, Defendant does appear to have exhausted his main ground for relief. (*See* Dkt. No. 632-1 at 2). Defendant requested that his sentence be reduced considering that his time credits did not apply towards early release, and the warden interpreted this request as based on Defendant's belief that an "unfair" sentence was administered. (*Id.* at 1). Then, rather than appeal the denial through the BOP process, Defendant waited just over 30 days to file the Motion with this court. *See Garrett*, 15 F.4th at 338.

On the other hand, there is no indication that Defendant ever asked the BOP to move to reduce his sentence based on his family circumstances. Because the exhaustion requirement is mandatory, *see Franco*, 973 F.3d at 467-48, Defendant's family circumstances are not subject to further consideration.[4] Defendant is otherwise free to exhaust this separate basis for release by requesting that the BOP file a motion on his behalf.

**B. Extraordinary and Compelling Circumstances**

In terms of extraordinary and compelling circumstances, Defendant argues that denying him the opportunity for early release based on the non-imposition of supervised release creates

[4] Even assuming exhaustion, Defendant's claim is conclusory and not otherwise supported by the record. Defendant declares that "[b]ecause of [various debilitating medical] conditions, [his] father needs assistance with his daily activities and his medical care[,]" and "[Defendant] [is] the only available caregiver for [his] father." (Dkt. No. 668-1 at 3). However, the PSR reflects that, after Defendant's arrest, his wife and children were forced to relocate with his parents, who are providing financial assistance. (Dkt. No. 494 at 45-46, 48). Defendant fails to explain who has cared for his father since his arrest, let alone why his mother and his wife are unable or unavailable as caregivers. *See United States v. Wheeler*, 2025 WL 2579589, at *3 (W.D. Wash. Sept. 5, 2025); *see also United States v. Wilson*, 2024 WL 4267923, at *5-7 (E.D. Tex. Sept. 23, 2024).

unwarranted sentencing disparities. (Dkt. No. 632 at 7-9). Defendant offers several cases where district courts have modified sentences under § 3582(c) to add a term of supervised release insofar as the practical effect of the modification is a reduction in the term of incarceration. *See United States v. Perez Sanchez*, 2024 WL 1069884 (E.D.N.Y. Mar. 12, 2024); *see also United States v. Oprea*, 2023 WL 6958690 (D.N.H. Oct. 20, 2023); *United States v. Nienadov*, 2023 WL 4139026 (S.D. Tex. June 22, 2023). Of these, the case offering the best articulation of extraordinary and compelling circumstances is perhaps *United States v. Perez Sanchez*, 2024 WL 1069884 (E.D.N.Y. Mar. 12, 2024).[5] The *Perez Sanchez* court explained as follows:

> [The defendant] is unable to earn credit for participation in recidivism-reducing activities solely because I did not sentence him to any supervised release—and I did so because he would likely be deported after imprisonment. [The defendant] is not subject to a final order of removal, however, and since I sentenced him, the BOP has clarified that individuals subject only to [immigration] detainers are eligible to apply [time] credits toward their early release. There is a significant difference between an individual's possible eventual deportation and a final order of removal. *See Roldan v. Racette*, 984 F.2d 85, 88 (2d Cir. 1993) (describing the "clear majority view" that an [immigration] detainer "does not result in present confinement" by [immigration authorities], but is merely "a notice that future [immigration] custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction"); *Bell v. U.S.I.N.S.*, 292 F. Supp. 2d 370, 373-74 (D. Conn. 2003) ("Unlike a final order of removal, a detainer is not a definitive decision regarding deportation or an order that will necessarily result in [immigration authorities] taking [a prisoner] into custody . . . . A detainer is more of a notice."). I see no reason that [the defendant's] immigration status should preclude him from earning and applying [time] credits for as long as he is subject to only an [immigration] detainer.

*Id.* at *4 (internal citations omitted). The *Perez Sanchez* court thus found extraordinary and compelling circumstances based on (i) a deemed lack of clarity at the time of sentencing whether

[5] One of the other cases, decided out of the Southern District of Texas, *United States v. Nienadov*, 2023 WL 4139026 (S.D. Tex. June 22, 2023), is unhelpful insofar as the court merely noted that the defendant "[had] presented evidence of the extraordinary hardship his continued confinement present[ed] for his family, victims of the Ukraine war." *Id.* at *1.

the defendant was eligible for time credits, and (ii) an unwarranted sentencing disparity between prisoners subject to immigration detainers and those subject to final orders of removal. *See id.*

That said, other courts have rejected extraordinary and compelling circumstances where they deliberately chose not to impose supervised release based on applicable Guidelines policy. In *United States v. Iossifov*, 2024 WL 4906480 (E.D. Kay. Nov. 27, 2024), for example, the court held as follows:

> The Court was deliberate at the time of [the defendant's] sentencing in declining to include a term of supervised release. It based this decision on the [Guidelines], which state that "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). At sentencing, the Court further explained that it was "following the recommendation in § 5D1.1c, [which] elected against a supervision term. [The defendant] will be deported following service of his sentence; his return to the U.S. is highly unlikely. The Court perceives no deterrent value in a supervision term." Although he may not yet be subject to a final order of removal, . . . the Court here sentenced [the defendant] on the express understanding that he would be deported following service of his sentence.

*Id.* at *9 (internal citations modified and omitted). The *Iossifov* court went further in noting that—

> [w]hat [the defendant] really seeks is post-hoc manipulation of his sentence to create a pathway to earlier release. The Court has no appetite and sees no authority for modifying his sentence in this way, effectively adding nominal carceral time but then affixing an inapplicable [supervised release] term just to facilitate a different ultimate result. That is not what § 3582 allows or envisions. The Court sentenced with plain intent not to impose supervised release. This tracked the guidelines and was [as] a result fully ordinary and not compelling.

*Id.*

Notably, the United States District Court for the Northern District of Texas, through *United States v. Mendoza*, 2025 WL 35878 (N.D. Tex. Jan. 6, 2025), applied similar reasoning to reach the same conclusion as the *Iossifov* court. *Mendoza*, 2025 WL 35878, at *4 (citing *Iossifov*, 2024 WL 4906480, at *9).

The *Iossifov* and *Mendoza* holdings align with the Fifth Circuit's pronouncement that relief under § 3582(c)(1)(A)(i) requires "some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Escajeda*, 58 F.4th at 186. Defendant cannot show that these requirements have been met insofar as the non-imposition of supervised release was consistent with § 5D1.1's policy statements. Moreover, the sentencing record is clear that Judge Alvarez specifically considered supervised release but decided against it given Defendant's status as a deportable alien. As an experienced Senior United States District Judge, there is no reason to believe that Judge Alvarez would have been unaware of the effect of her decision on the BOP sentence calculation.

As such, Defendant fails to show extraordinary and compelling circumstances for a modification of his sentence.

**C. Sentencing Factors**

Defendant relies on two main arguments in attempting to show that a modification is consistent with the § 3553(a) sentencing factors. First, Defendant argues that, absent his eligibility for time credits, he is deprived of an incentive to participate in rehabilitative programming. (Dkt. No. 632 at 6). Furthermore, in citing the need to avoid unwarranted sentencing disparities, Defendant points out that many non-citizens, like himself, who are not subject to final orders of removal, are subject to early release to immigration custody upon the application of time credits. (*Id.* at 7-9). Along these lines, Defendant contends that six of his co-defendants were sentenced to terms of supervised release after their prison sentences, such that they will ultimately serve less prison time than him when accounting for time credits. (*Id.* at 2).

These arguments are unconvincing. To begin, the applicable statutory scheme offers multiple uses for credits earned through Defendant's participation in rehabilitative programming.

(Dkt. No. 662 at 8-9). The incentives and rewards for prisoners who participate in such programming include phone and video conferencing privileges, additional visitation time, increased commissary spending, and access to email. 18 U.S.C. § 3632(d)(1), (3).

Nor does Defendant show that he is subject to unwarranted sentencing disparities, whether in general or with respect to his co-defendants. As noted above, the non-imposition of supervised release was specifically contemplated by § 5D1.1, and Defendant was sentenced accordingly. Moreover, of the six co-defendants noted by Defendant, only one is a non-citizen like himself, namely, Ivan Ornelas-Pio. *See United States v. Ornelas-Pio*, Action No. 7:23-CR-0051-1 (S.D. Tex.), Dkt. No. 445. In that co-defendant's case, Judge Alvarez imposed a term of five years of supervised release. *Id.*, Dkt. No. 586 at 3. What Defendant fails to note, however, is that his co-defendant was sentenced to a prison term of 200 months. *Id.* at 2. Defendant is not similarly situated in that respect. His sentence of 65 months represented a substantial downward variance of 43 months from the low end of the advisory Guidelines range of 108 months. The fact of this downward variance can be understood to reflect that Judge Alvarez intended for Movant to serve the full breadth of his prison term.

As such, Defendant fails to show a modification of his sentence is consistent with the sentencing factors.

**D. Guidelines Policy**

Finally, based on holdings like *Iossifov* and *Mendoza*, Defendant fails to show that a modification of his sentence is consistent with § 1B1.13(b) of the Guidelines.

## IV. CONCLUSION

***Recommendation***

For these reasons, the Magistrate Judge RECOMMENDS that the Motion (Dkt. No. 632) be DENIED.

***Objections***

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Judge on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Judge, except on grounds of clear error or manifest injustice.

***Directive to Clerk of Court***

The Clerk of Court is DIRECTED to forward a copy of this report to the parties by any receipted means.

DONE at McAllen, Texas this 16th day of July 2026.

J. SCOTT HACKER
United States Magistrate Judge